**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAVID ELLIOT,<br><br>                  Plaintiff,<br><br>   v.<br><br>NOBLE CORPORATION, CHARLES M. SLEDGE, PAUL ARONZON, PATRICK J. BARTELS JR., ROBERT W. EIFLER, ALAN J. HIRSHBERG, ANN D. PICKARD, and MELANIE M. TRENT,<br><br>                  Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff David Elliot ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder action brought by Plaintiff against Noble Corporation ("Noble" or the "Company") and the members of Noble's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to sell Noble to The Drilling Company of 1972 A/S ("Maersk Drilling") (the "Proposed Transaction").

2. On November 10, 2021, Noble entered into a Business Combination Agreement with Maersk Drilling, Noble Finco Limited, an indirect, wholly owned subsidiary of Noble ("Topco"), and Noble Newco Sub Limited, a direct, wholly owned subsidiary of Topco ("Merger Sub") (the "Merger Agreement"). Under the terms of the Merger Agreement, Noble will merge with and into Merger Sub and each Noble share will be converted into one newly issued ordinary share of Topco. Additionally, Topco will make a tender offer to Maersk Drilling's shareholders in which Maersk Drilling shareholders may exchange each Maersk Drilling share for 1.6137 shares of Topco and elect cash consideration for up to $1,000 of their Maersk Drilling shares, subject to an aggregate cap of $50 million.

3. On April 11, 2022, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that Noble stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things, the Company's financial projections and the financial analyses that support the fairness opinion provided by the Company's financial advisor, Ducera Securities LLC's ("Ducera").

4. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Noble stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

5. The special meeting for Noble stockholders to vote on the Proposed Transaction is currently scheduled for May 10, 2022. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Noble's other shareholders to make an informed decision

whether to vote their shares in favor of the Proposed Transaction. Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Noble's common stock trades on the New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of shares of Noble common stock.

10. Defendant Noble is incorporated in the Cayman Islands, with its principal executive offices located at 13135 Dairy Ashford, Suite 800, Sugar Land, Texas 77478. Noble's shares trade on the New York Stock Exchange under the ticker symbol "NE."

11. Defendant Charles M. Sledge has been a director of the Company at all relevant times.

12. Defendant Paul Aronzon has been a director of the Company at all relevant times.

13. Defendant Patrick J. Bartels Jr. has been a director of the Company at all relevant times.

14. Defendant Robert W. Eifler has been President, Chief Executive Officer and a director of the Company at all relevant times.

15. Defendant Alan J. Hirshberg has been a director of the Company at all relevant times.

16. Defendant Ann D. Pickard has been a director of the Company at all relevant times.

17. Defendant Melanie M. Trent has been a director of the Company at all relevant times.

18. Defendants identified in paragraphs 11-17 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

19. Founded in 1921, Noble, together with its subsidiaries, operates as an offshore drilling contractor for the oil and gas industry worldwide. The Company provides contract drilling services to the oil and gas industry through its fleet of mobile offshore drilling units. As of February 16, 2022, Noble operated a fleet of 20 offshore drilling units, which included 12 floaters and 8 jackups.

### The Proposed Transaction

20. On November 10, 2021, Noble announced that it had entered into the Proposed Transaction, stating, in relevant part:

> SUGAR LAND, Texas and COPENHAGEN, Denmark, Nov. 10, 2021 -- Noble Corporation (NYSE: NE) ("Noble") and The Drilling Company of 1972 A/S (CSE:

DRLCO) ("Maersk Drilling") today announced that they have entered into a definitive business combination agreement to combine in a primarily all-stock transaction. Following the completion of the transaction, the Maersk Drilling shareholders and Noble shareholders will each own approximately 50% of the outstanding shares of the combined company. The combined company will be named Noble Corporation and its shares will be listed on the New York Stock Exchange ("NYSE") and Nasdaq Copenhagen.

Noble and Maersk Drilling share a very strong conviction about the compelling industrial logic for taking this step to create a differentiated offshore drilling company with the scale, capabilities, and resources to successfully serve a broad range of customers. The combined company will have a modern, high-end fleet of floaters and jackup rigs across benign and harsh environments able to meet the needs of customers in the most attractive oil and gas basins. This transaction will unite and leverage the strong capabilities of Noble and Maersk Drilling, which both have decades of experience, differentiated value propositions, and unwavering commitments to best-in-class safety and service quality.

The combination is expected to generate estimated annual run-rate synergies of USD 125 million, which will create significant value for shareholders. The combined company will benefit from a diverse revenue mix, a robust contract backlog with significant earnings visibility, a solid balance sheet, and a strong free cash flow potential, supporting the potential for return of capital to shareholders while providing resiliency through the cycle.

The business combination agreement has been unanimously approved by the Boards of Directors of Noble and Maersk Drilling, and the transaction is also supported by Noble's top three shareholders, which collectively currently own approximately 53% of Noble shares, and APMH Invest A/S which currently owns approximately 42% of the share capital and votes of Maersk Drilling. In addition, certain foundations related to APMH Invest A/S, which currently own approximately 12% of the share capital and votes of Maersk Drilling, have expressed their intention to support the transaction.

Maersk Drilling's Chairperson of the Board of Directors, Claus V. Hemmingsen, said: "*This combination carries strong industry logic. With the combination we are creating a differentiated provider of offshore drilling services, which will be able to enhance the customer experience through increased scale, global reach, and industry-leading innovation. The combination will create value for all shareholders and will offer investors a unique opportunity to benefit from the market recovery, a robust financial position and strong free cash flow potential, all paving the way for the potential return of capital to shareholders.*"

Noble's Chairperson of the Board of Directors, Charles M. (Chuck) Sledge, said: "*The combination of Noble and Maersk Drilling will create a leading offshore driller with global scale, a strong balance sheet and significant free cash flow*

*generation potential. The transaction will be accretive to free cash flow per share, and I am confident that this combination will deliver meaningful value to all shareholders."*

**Strategic rationale**

The combination of Noble and Maersk Drilling is underpinned by a compelling strategic rationale for all stakeholders:

- **Creating a world class offshore driller:** The combined company will benefit from a modern, high-end fleet comprising of 20 floaters and 19 jackup rigs across benign and harsh environments, which will serve a broad portfolio of high quality, blue-chip customers.

- **Enhancing the customer experience**: The combination will bring together two complementary cultures with an unwavering commitment to best-in class safety performance and customer satisfaction. The combined company will be a leader and first-mover in innovation and sustainability.

- **Accretive to all shareholders:** The realization of the potential annual cost synergies of USD 125 million is expected to be front-loaded with the full potential to be realized within two years after closing of the transaction. The synergies are expected to be accretive to free cash flow per share. The combined company's scale will significantly enhance its cost-competitiveness.

- **Platform for strong cash flow generation and distribution:** The combined company is expected to have a normalized free cash flow potential of up to USD 375 million in 2023 and onwards with a highly attractive free cash flow yield potential, and additional cash flow growth stemming from the recovery of the international offshore drilling market. The balance sheet of the combined company will be best-in class with low net leverage and strong liquidity including a combined cash balance of approximately USD 900 million, providing resiliency through the cycle and allowing the combined company to focus on implementing a sustainable return of capital policy for shareholders.

**Pro-forma financials**

In the last twelve months ended September 2021, Noble and Maersk Drilling had combined pro-forma revenue of approximately USD 2.1 billion. As of 30 September 2021 (pro-forma for the asset divestitures announced by Noble and Maersk Drilling), the companies had a combined cash balance of approximately USD 900 million resulting in net debt of approximately USD 600 million with no newbuild capex commitments. As of 30 September 2021, the companies had revenue backlog of USD 2.4 billion (pro-forma for the asset divestitures).

**Leadership team**

Upon the closing of the transaction, Robert W. Eifler, Noble's President and Chief Executive Officer, will become President and Chief Executive Officer of the combined company and will be a member of the Board of Directors.

Commenting on the transaction, Robert W. Eifler stated, "*Both Noble and Maersk Drilling have many decades of history as leaders in the offshore drilling industry. I look forward to the future as these two great organizations come together to create a stronger combined company. Our shared passion for safety and operational performance will drive better service for our customers while delivering better potential returns to our investors*."

The combined company will have a seven-member Board of Directors with balanced representation from Noble and Maersk Drilling. Initially, the Board of Directors will be comprised of three directors designated by Noble, three directors designated by Maersk Drilling, and Robert W. Eifler. Charles M. (Chuck) Sledge will become chairman of the Board of Directors jointly appointed by Noble and Maersk Drilling. Claus V. Hemmingsen will be one of the three directors designated by Maersk Drilling.

The combined company will be headquartered in Houston, Texas, and will maintain a significant operating presence in Stavanger, Norway, to retain proximity to customers and support operations in the Norwegian sector and the broader North Sea, and to ensure continued access to talent.

**Transaction terms and structure**
The transaction will be implemented by way of (i) a merger of Noble with and into a wholly owned subsidiary of Noble Finco Limited, a private limited company formed under the laws of England and Wales and an indirect, wholly owned subsidiary of Noble ("Topco"), and (ii) a Danish voluntary tender exchange offer by Topco to Maersk Drilling shareholders. In connection with the merger, (x) each outstanding Noble share and penny warrant will be converted into the right to receive one share of Topco, and (y) each issued tranche 1, tranche 2 and tranche 3 warrant will be converted into a warrant to purchase one share of Topco. Additionally, pursuant to the exchange offer, Maersk Drilling shareholders may exchange each Maersk Drilling share for 1.6137 Topco shares, and will in lieu of their entitlement to certain Topco shares have the ability to elect cash consideration for up to USD 1,000 of their Maersk Drilling shares (payable in DKK), subject to an aggregate cash consideration cap of USD 50 million (excluding any cash paid for fractional shares). Pursuant to the terms of the business combination agreement, upon closing of the transaction, the Maersk Drilling shareholders and the Noble shareholders will each own approximately 50% of the outstanding shares of Topco, and those shares will be listed on both the NYSE and Nasdaq Copenhagen. The approximate 50% ownership percentage of the Maersk Drilling and Noble shareholders is calculated using 66.6 million shares for Noble shareholders (which includes approximately 6.5 million penny warrants and excludes dilution from outstanding warrant tranches and share based compensation

7

plans) and assumes that all Maersk Drilling shares are tendered in the exchange offer for shares.

The transaction is subject to Noble shareholder approval, acceptance of the exchange offer by holders of at least 80% of Maersk Drilling shares, merger clearance and other regulatory approvals, listing on the NYSE and Nasdaq Copenhagen, and other customary conditions. The transaction is targeted to close in mid-2022.

**Advisors**
J.P. Morgan Securities plc is acting as sole financial advisor and Davis Polk & Wardwell London LLP and Gorrissen Federspiel Advokatpartnerselskab are serving as legal counsel to Maersk Drilling. Ducera Partners LLC and DNB Bank ASA are serving as financial advisor and Kirkland & Ellis LLP, Plesner Advokatpartnerselskab, and Travers Smith LLP are serving as legal counsel to Noble.

**The Materially Incomplete and Misleading Proxy Statement**

21.    On April 11, 2022, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC. The Proxy Statement, which recommends that Noble stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning the Company's financial projections and the financial analyses that support the fairness opinion provided by the Company's financial advisor, Ducera.

*Material Misrepresentations and/or Omissions Concerning Noble's Financial Projections and Ducera's Financial Analyses*

22.    The Proxy Statement fails to disclose material information concerning the financial projections for Noble.

23.    With respect to Noble management's Noble Case A, Noble Case B, Maersk Drilling Case A and Maersk Drilling Case B projections, the Proxy Statement fails to disclose all line items underlying: (i) Adjusted EBITDA; and (ii) Unlevered Free Cash Flow.

24. The Proxy Statement also fails to disclose material information concerning Ducera's financial analyses.

25. With respect to Ducera's *Useful Life Discounted Cash Flow Analysis* ("DCF") of each of Noble and Maersk Drilling, the Proxy Statement fails to disclose a quantification of: (i) the inputs and assumptions underlying the discount rates ranging from 9.5% to 11.5%; (ii) net debt as of September 30, 2021; and for the DCF of Noble, (iii) dilution from warrants.

26. With respect to Ducera's *5-Year DCF* of each of Noble and Maersk Drilling, the Proxy Statement fails to disclose: (i) the terminal metric used in the analysis and quantification thereof; (ii) quantification of the terminal values for the Company and Maersk Drilling; and (iii) quantification of the inputs and assumptions underlying the discount rate range of 9.5% to 11.5%.

27. With respect to Ducera's *Publicly Traded Company Valuation Analysis* of Noble, the Proxy Statement fails to disclose: (i) the individual financial metrics for each of the selected companies analyzed by Ducera; (ii) the value of Noble's remaining value of firm contract backlog as of September 30, 2021; and (iii) the sale proceeds received from Noble's recent transaction with ADES International Holding.

28. With respect to Ducera's *Publicly Traded Company Valuation Analysis* of Maersk Drilling, the Proxy Statement fails to disclose: (i) the individual financial metrics for each of the selected companies analyzed by Ducera; (ii) the value of Maersk Drilling's remaining value of firm contract backlog as of September 30, 2021; and (iii) the sale proceeds received from Maersk Drilling's recent transaction with Havila Sirius.

29. In sum, the omission of the above-referenced information renders statements in the "Projections Prepared by Noble's Management" and "Opinion of Noble's Financial Advisor" sections of the Proxy Statement materially incomplete and misleading in contravention of the

Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Noble will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Noble**

30. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

31. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Noble is liable as the issuer of these statements.

32. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

33. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

34. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

35. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

36. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

37. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

38. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

39. The Individual Defendants acted as controlling persons of Noble within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Noble and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

40. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

41. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged

herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

42. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

43. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Noble, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 20, 2022                                    **ACOCELLI LAW, PLLC**

By  /s/ Richard A. Acocelli
Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

*Attorneys for Plaintiff*